IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

LESLEY ADAMS and
FIKILE MPOFU,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

NTT DATA, INC.,
NTT DATA SERVICES, LLC,
DELL SERVICES, LLC, and
SYNERGY SERVICES, INC. D/B/A TALENTWAVE,

      Defendants.

_____

**CLASS AND COLLECTIVE ACTION COMPLAINT**
_____

Plaintiffs Lesley Adams ("Adams") and Fikile Mpofu ("Mpofu") (together, "Plaintiffs") through their undersigned counsel, individually and on behalf of all others similarly situated, file this Class and Collective Action Complaint against Defendants NTT Data, Inc. and NTT Data Services, LLC ("NTT Data"), Dell Services, LLC ("Dell Services") and Synergy Services, Inc. d/b/a TalentWave ("TalentWave") (together, "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and California law. Plaintiffs allege that they and other similarly situated individuals did not receive overtime pay for hours worked in excess of forty (40) in a workweek. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1. Jurisdiction over Plaintiffs' FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, since Defendant TalentWave maintains its corporate headquarters in Denver, Colorado, and is incorporated in Colorado. From its Colorado headquarters, TalentWave made arrangements with Defendant NTT Data to provide Plaintiffs' and other consultants' services on various projects.

## PARTIES

4. Plaintiff Lesley Adams ("Adams") is an individual residing in Costa Mesa, California. Adams worked for Defendants as a consultant providing support and training to Defendants' clients in using a new recordkeeping system at Dignity Health Community Hospital in San Bernardino, California from July-August 2015. Pursuant to 29 U.S.C. § 216(b), Adams has consented in writing to participate in this action.

5. Plaintiff Fikile Mpofu is an adult resident of Asheville, NC. Mpofu worked for Defendants as a consultant providing support and training to Defendants' clients in using a new recordkeeping system at Dignity Health Medical Group in Bakersfield, California in April 2017. Pursuant to 29 U.S.C. § 216(b), Mpofu has consented in writing to participate in this action.

6.     Defendant NTT Data Services, LLC is a corporation providing information technology educational services for the healthcare industry across the country. NTT Data maintains its corporate headquarters in Plano, Texas, and is incorporated in Delaware. Defendant NTT Data, Inc. is the parent company of NTT Data Services, LLC.

7.     On or about November, 2016, NTT Data, Inc. acquired Dell Services, LLC. ("Dell Services"), a company which had provided information technology solutions to various companies, including companies in the healthcare industry. Upon information and belief, Dell Services had its corporate headquarters in Round Rock, Texas. The newly acquired entity was called NTT Data Services, LLC ("NTT Data").

8.     Today, NTT Data provides electronic recordkeeping software to be used by doctors and nurses at hospitals across the United States.

9.     In order to assist the doctors and nurses in learning how to use new software, Dell Services had previously used TalentWave to recruit consultants for these projects. Today, NTT Data likewise uses TalentWave for this purpose.

10.    Defendant Synergy Services, Inc. d/b/a TalentWave ("TalentWave") coordinates staffing for NTT Data projects, and engages Plaintiffs and other consultants to work on these projects. TalentWave maintains its corporate headquarters in Denver, Colorado, and is incorporated in Colorado.

11.    TalentWave is in charge of hiring consultants, screening them to make sure they meet project requirements, coordinating their schedules, addressing any issues that arise during a project, and issuing their pay.

12.    Upon information and belief, NTT Data and Talentwave share email addresses (*e.g.*, nttdta@talentwave.com) from which Defendants jointly correspond with

3

the consultants. Prior to 2016, Defendants Dell Services and Talentwave likewise shared an e-mail address (dell@synergyservicescorp.com) for this purpose.

13. Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

14. Defendants' annual gross volume of sales made or business done exceeds $500,000.

## CLASS DEFINITIONS

15. Plaintiffs bring Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following class of potential FLSA opt-in litigants:

> All individuals who worked for TalentWave, Dell Services and NTT Data ("Defendants") providing training and support to Defendants' clients in using electronic recordkeeping systems in the United States from May 26, 2015 to the present (the "FLSA Collective").

16. Plaintiffs bring Counts II-V of this lawsuit pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the following class:

> All individuals who worked for TalentWave, Dell Services and NTT Data ("Defendants") providing training and support to Defendants' clients in using electronic recordkeeping systems in California from May 26, 2014[1] to the present (the "California Class").

17. The FLSA Collective and the California Class are together referred to as the "Classes."

---

[1] The statute of limitations on Plaintiffs' California Unfair Competition Law claim is four (4) years.

4

18. Plaintiffs reserve the right to redefine the Classes prior to notice and class certification, and thereafter, as necessary.

## **FACTS**

19. As a leading healthcare information technology firm, NTT Data provides training and support to medical facilities in connection with the implementation of new electronic recordkeeping systems. NTT Data employs consultants, such as Plaintiffs, who perform such training and support services throughout the United States.

20. Prior to 2016, Dell Services provided training and support to medical facilities in connection with the implementation of new electronic recordkeeping systems. Dell Services employed consultants, such as Plaintiffs, who perform such training and support services throughout the United States.

21. TalentWave, a leading staffing company, engages consultants, such as Plaintiffs, to provide training and support services to medical facilities for Dell Services, and, subsequently, NTT Data.

22. Defendants' financial results are significantly driven by the number of consultants performing training and support services for their customers, and the fees that Defendants charge the customers for these services.

23. Between July and August 2015, Adams was assigned by TalentWave to provide training and support services to healthcare staff for Dell Services at Dignity Health Community Hospital in San Bernardino, California. There were approximately 200 other consultants working with Adams on this project, all of whom followed the same schedule and had the same general responsibilities.

24. In April 2017, Mpofu was assigned by TalentWave to provide training and support services to healthcare staff for NTT Data at Dignity Health Medical Group in Bakersfield, California. There were between 200 and 300 consultants working with Mpofu on this project, all of whom followed the same schedule and had the same general responsibilities.

25. Plaintiffs were paid solely on a straight hourly basis for hours over forty. When Mpofu inquired about receiving overtime pay for hours worked over 40 a week, a TalentWave representative told her she would not be receiving overtime.

## Plaintiffs and Members of the Classes
## Routinely Worked in Excess of 40 Hours a Week

26. Plaintiffs and Members of the Classes routinely worked in excess of forty (40) hours per workweek, but were not paid overtime compensation as required by the FLSA.

27. Plaintiffs and Members of the Classes were required to work twelve (12) hours a day, six (6) days a week on their projects for TalentWave, Dell Services and NTT Data.

28. Although Plaintiffs and Members of the Classes were required, permitted, or encouraged to work more than forty (40) hours per week, Defendants failed to pay them one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week, as required by the FLSA and California law.

29. Instead, Plaintiffs and Members of the Classes were paid a straight hourly rate for hours that they worked, regardless of whether they worked more than forty (40) hours in a week. Plaintiffs and Members of the Classes were not paid on a salary basis.

**Plaintiffs and Members of the Classes are not  
Exempt "Computer Employees" under the FLSA**

30. Plaintiffs and Members of the Classes provided support and training to hospital staff in connection with electronic recordkeeping systems. Plaintiffs have no specialized training or certification in computer programming, software documentation and analysis, or testing of computer systems or programs. Plaintiffs and Members of the Classes were not working as, nor were they similarly skilled as computer systems analysts, computer programmers, or software engineers, as defined in 29 C.F.R. § 541.400(a).

31. Plaintiffs' and Class Members' primary duties consisted of training and aiding healthcare staff with using new recordkeeping software. This type of user support is also known as "at the elbow." Plaintiffs' and Class Members' primary duties did not include the higher skills of the "application of systems analysis techniques and procedures," pursuant to 29 C.F.R. § 541.400(b)(1). Plaintiffs and Members of the Classes did not analyze, consult or determine hardware, software programs or any system functional specifications for Dell Services and NTT Data's clients. *See id.*

32. Plaintiffs and Members of the Classes did not consult with Dell Services and NTT Data's customers to determine or recommend hardware specifications. Plaintiffs and Members of the Classes did not design, develop, document, analyze, create, test or modify a computer system or program, as defined in 29 C.F.R. § 541.400(b)(2).

33. While Plaintiffs' and Class Members' "work was highly dependent upon, or facilitated by, the use of computers and computer software programs;" they were not "primarily engaged in computer systems analysis and programming." U.S. Dept. of Labor, Wage & Hour Div., Fact Sheet #17E: Exemption for Employees in Computer-Related

7

Occupations under the Fair Labor Standards Act (FLSA). Plaintiffs and Members of the Classes provided support and training in using electronic recordkeeping systems to Dell Services and NTT Data's clients.

### Defendants Willfully Violated the FLSA

34. TalentWave, Dell Services and NTT Data and their senior management had no reasonable basis to believe that Plaintiffs and the members of the FLSA Collective were exempt from the requirements of the FLSA. Rather, Defendants either knew or acted with reckless disregard of clearly applicable FLSA provisions in failing to pay overtime to Plaintiffs and the FLSA Collective. Such willfulness is demonstrated by, or may be reasonably inferred from, Defendants' actions and/or failures to act, including the following:

   a. At all times relevant hereto, Defendants maintained timesheets and payroll records which reflected the fact that Plaintiffs and the FLSA Collective did, in fact, regularly work in excess of 40 hours per week, and thus, Defendants had actual knowledge that Plaintiffs and the FLSA Collective worked overtime;

   b. At all times relevant hereto, Defendants knew that they did not pay Plaintiffs and the FLSA Collective one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week;

   c. As evidenced by TalentWave's job offer letters and Dell Services and NTT Data's training materials for consultants, at all times relevant hereto, Defendants were aware of the nature of the work performed by consultants, and, in particular, that such individuals worked exclusively at-the-elbow of

8

    healthcare workers employed by Dell Services and NTT Data's clients, providing basic training and support;

d. As evidenced by their own job offer letters and written agreements with consultants, Defendants knew and understood that they were subject to the wage requirements of the FLSA as "employers" under 29 U.S.C. § 203(d).

e. At all times relevant hereto, Defendants were aware that consultants did not engage in: (i) computer systems analysis, computer programming, or software engineering, as defined in 29 C.F.R. § 541.400(a); (ii) the application of systems analysis techniques and procedures, as defined in 29 C.F.R. § 541.400(b)(1); or (iii) the design, development, analysis, creation, testing or modification of a computer system or program, as defined in 29 C.F.R. § 541.400(b)(2);

f. Defendants lacked any reasonable or good faith basis to believe that consultants fell within any exemption from the overtime requirements of the FLSA. Rather, Defendants deliberately misclassified consultants as exempt from the provisions of the FLSA in order to avoid paying them overtime compensation to which they were entitled;

g. At all times relevant hereto, Defendants were aware that they would (and, in fact did) benefit financially by failing to pay Plaintiffs and the FLSA Collective one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week; and

h. Thus, Defendants had (and have) a strong financial motive to violate the requirements of the FLSA by misclassifying consultants as exempt from the

overtime requirements of the FLSA.

35. Based upon the foregoing, Defendants were cognizant that, or recklessly disregarded whether, their conduct violated the FLSA.

## **COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

36. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

37. Plaintiffs desire to pursue their FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

38. Plaintiffs and the FLSA Collective Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals have been subject to Defendants' common business and compensation practices as described herein, and, as a result of such practices, have not been paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common misclassification, compensation and payroll practices.

39. Specifically, Defendants did not compensate Plaintiffs and the FLSA Collective one-and-a-half (1 ½) times the regular rate for hours worked over forty (40) in a workweek.

40. The similarly situated employees are known to Defendants, are readily identifiable, and can easily be located through Defendants' business and human resources records.

41. Defendants employ many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of this action through

U.S. Mail and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

42. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

## COUNT I
## FLSA – Overtime Wages
## (On Behalf of Plaintiffs and the FLSA Collective)

43. All previous paragraphs are incorporated as though fully set forth herein.

44. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d).

45. Defendants are subject to the wage requirements of the FLSA because Defendants are "employers" under 29 U.S.C. § 203(d).

46. At all relevant times, Defendants have been "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

47. During all relevant times, Plaintiffs and the FLSA Collective Members have been covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

48. Plaintiffs and the FLSA Collective are not exempt from the requirements of the FLSA.

49. Plaintiffs and the FLSA Collective Members are entitled to be paid overtime

compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

50. Defendants, pursuant to its policies and practices, failed and refused to pay overtime premiums to Plaintiffs and the FLSA Collective members for all their overtime hours worked by misclassifying Plaintiffs and the FLSA Collective as exempt from the requirements of the FLSA.

51. Defendants knowingly failed to compensate Plaintiffs and the FLSA Collective Members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

52. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

53. In violating the FLSA, on information and belief, Defendants did not have any good faith basis to rely on any legal opinion or advice to the contrary.

## **CALIFORNIA CLASS ACTION ALLEGATIONS**

54. Plaintiffs bring Counts II-V of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the California Class defined above.

55. The members of the California Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the California Class.

56. Plaintiffs will fairly and adequately represent and protect the interests of the California Class because there is no conflict between the claims of Plaintiffs and those of the California Class, and Plaintiffs' claims are typical of the claims of the California Class.

Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

57. There are questions of law and fact common to the proposed California Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate California law through its policy or practice of not paying its hourly workers overtime compensation, and failing to provide them with meal and rest breaks.

58. Plaintiffs' claims are typical of the claims of the California Class Members in the following ways, without limitation: (a) Plaintiffs are members of the California Class; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the California Class; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the California Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the California Class Members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the California Class Members.

59. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the California Class predominate over any questions affecting only individual Class Members.

60. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in

the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The California Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the California Class would create the risk of inconsistent or varying adjudications with respect to individual California Class Members that would establish incompatible standards of conduct for Defendants.

61. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the California Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

62. Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the California Class. Plaintiffs envision no difficulty in the management of this action as a class action.

**COUNT II**
**California Labor Code §§ 510 and 1194**
**(On Behalf of Plaintiffs and the California Class)**

63. All previous paragraphs are incorporated as though fully set forth herein.

64. The actions of Defendants as set forth above violate California Labor Code §510, which requires an employer to compensate employees at one-and-a-half times the employee's regular rate of pay for all hours worked in excess of eight, up to and including 12 hours in a workday, and double the employee's regular rate of pay for all hours worked in excess of 12 in a workday.

65. Defendants failed to pay Plaintiffs and other individuals who worked for TalentWave, Dell Services and NTT Data providing training and support to Dell Services and NTT Data's clients in using electronic recordkeeping systems in California overtime at the appropriate rate required by Cal. Lab. Code §510, since they had a policy of only paying these individuals at a straight hourly rate.

66. Pursuant to Cal. Lab. Code §1194, Plaintiffs and the individuals who worked for TalentWave, Dell Services and NTT Data providing training and support to Dell Services and NTT Data's clients in using electronic recordkeeping systems in California are entitled to recovery of unpaid overtime compensation, as well as attorneys' fees and costs.

**COUNT III**
**California Labor Code §§ 226.7 and 512**
**(On Behalf of Plaintiffs and the California Class)**

67. All previous paragraphs are incorporated as though fully set forth herein.

68. The conduct of Defendants, as set forth above, in failing to provide individuals who worked for TalentWave, Dell Services and NTT Data providing training and support to Dell Services and NTT Data's clients in using electronic recordkeeping systems with meal and rest breaks during their workdays, which are up to 12 hours long, constitutes a violation of Cal. Lab. Code §§ 226.7 and 512, which require an employer to provide a meal period of at least 30 minutes for any shift over 5 hours, to be provided within the first 5 hours; and a second meal period off at least 30 minutes for shifts over 10 hours. The actions of Defendants also constitute a violation of the rest break requirement contained in Cal. Lab. Code 226.7, which requires an employer to provide rest breaks of no less than 10 minutes for every 4 hours worked.

15

### COUNT IV
### California Labor Code § 203
### (On Behalf of Plaintiffs and the California Class)

69. All previous paragraphs are incorporated as though fully set forth herein.

70. Defendants' failure to pay wages due to Plaintiffs and California Class Members as alleged above was willful in that Defendants knew wages were due but failed to pay them.

71. Plaintiffs and California Class members who no longer work for Defendants are entitled to penalties under Cal. Lab. Code § 203, which provides that, if an employer willfully fails to pay an employee all wages due within 72 hours of their termination, the employee's wages shall continue as a penalty until paid for a period of up to 30 days from the time they were due.

### COUNT V
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf of Plaintiffs and the California Class)

72. All previous paragraphs are incorporated as though fully set forth herein.

73. The conduct of Defendants, as set forth above, violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"). The conduct of Defendants constitutes unlawful business acts or practices, in that Defendants have violated California Labor Code Sections 203, 226.7 and 512. As a result of Defendants' unlawful conduct, Plaintiffs and California Class members suffered injury in fact and lost money and property, including, but not limited to unpaid overtime wages, and unpaid meal and rest breaks. Pursuant to California Business and Professions Code § 17203, Plaintiffs and California Class members seek declaratory and injunctive relief for Defendants' unlawful conduct and to recover restitution. Pursuant to California Code of Civil Procedure

§ 1021.5, Plaintiffs and Class Members who worked for Defendants in California are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

### **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

a. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Collective;

c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the California Class;

d. An order appointing Plaintiffs' attorneys as Class Counsel;

e. A judgment in favor of Plaintiffs and Class Members for all penalties and liquidated damages allowed by law;

f. An award of pre-judgment and post-judgment interest to Plaintiffs and Class Members;

g. An award of attorneys' fees and costs provided by law; and

h. Any other relief to which Plaintiffs and Class Members may be entitled.

Dated: May 26, 2018            Respectfully submitted,

/s/ Sarah R. Schalman-Bergen
Shanon J. Carson
Sarah R. Schalman-Bergen
Alexandra K. Piazza
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

> Harold Lichten (*pro hac vice anticipated*)
> Olena Savytska, (*pro hac vice anticipated*)
> **LICHTEN & LISS-RIORDAN, P.C.**
> 729 Boylston Street, Suite 2000
> Boston, MA 02116
> Tel: (617) 994-5800
> hlichten@llrlaw.com
> osavytska@llrlaw.com
>
> Attorneys for Plaintiffs and the Proposed Classes